# IN THE UNITED STSTES DISTRICT OF MARYLAND COURT

Samuel H. Mwabira-Simera
4-E University Parkway #ERICA
Baltimore, MD 21218

*Plaintiff*

-against-

Morgan State University
Dr. David Wilson President
Dr. Farrar Linda, Special Vice President
Dr. Don-Terry Veal, Chief of Staff
Dr. Tanyka M. Barber, Director of Diversity and EEO Title IX Coordinator
Dr. T. Joan Robinson, Vice President for International Affairs
Dr. Kevin Banks VP for student affairs
Dr. Raymond C. Vollmer, Vice President for Finance and Management
Dr. Bickram.Janak Vice President for Finance and Management
Dr. Stacey Benn Vice President for Finance and Management
Dr. Kenneth Jackson interim Vice President/Provost for Academic Affairs
Dr. Kara Miles Turner, Associate Provost for Enrollment
Management and Student Academic Support Services
Dr. Mark Garrison, Dean of Graduate School
Dr. Shire Williams Executive Vice Dean of Graduate School
Hans Cooper, University Registrar, Montebello Complex
Officer Adrian J. Wiggins Executive Director
Office of campus and Public Safety
Officer T. Byrd
P/O Shepherdson, MSU Police officer
P/O Kevin Jones MSU Police officer
P/O V. Mitchell, MSU Police officer
Morgan State University, Truth Hall Suite 400
1700 E. Cold Spring Lane
Baltimore MD 21251

*Defendants*

Case No 19-3320 DLB

## Complaint and Prayer for Jury Trial

**Introduction**

Samuel H. Mwabira-Simera (hereinafter "Plaintiff" or "Mwabira-Simera"), alleges as follows:

Samuel H. Mwabira-Simera brings this action to enforce the provisions of Titles VII and VI of the Civil Rights Act of 1964 42 USC 2000e et sequel 5(f)(3) and its implementing regulation at 34 C.F.R.§ 100.3 (b)(v). (5) Title IX of the Educations Amendments Act of 1972 [same treatment given to similarly situate other students]. (6) Equal Education Opportunity Act of 1974, (13)- Family educational and privacy rights Act 1974 U.S. Code › Title 20 › Chapter 31 › Subchapter III › Part 4 › § 1232g, clause (iii) of

1

subparagraph (S) (1)-9(i)(v), paragraph (B) of subsection (a) (B) and (C) of paragraph (1), Clause (B) paragraph (2)(A), paragraph (1)(F)(14) The Higher Education Act of 1965as referred to in subsec. (i)(1), (8) Pub. L. 89–329, Nov. 8, 1965, 79 Stat. 1219, chapter 28 (§ 1001 et seq.) of this title and part C (§ 2751 et seq.), Deformation per se Tort 808, and (23) constitutional rights under the Due Process Clause of the Fifth Amendment of the United States Constitution

2. Mwabira-Simera brings this action for relief, under 42 U.S.C. 1983 against Morgan State University, (herein "Defendants Morgan" or "Morgan"), and (collectively "Defendants"), as victim of stress, depression leading to surgery, fear, physically, and psychologically tortured, labelled fraudulent, accused of applying for graduate studies, eminent security threat and expulsion with the malicious intention to deprive of constitutional rights to education, and injury, infringed Plaintiffs' rights to due process and is seeking damages and injunctive and declaratory relief

3 For public policy, Defendants are entitled to a qualified good-faith immunity from liability for damages under 1983, they are not immune from such liability since they knew or reasonably should have known that the action they took within their sphere of official responsibility with the malicious intention to a deprivation of such rights or other injury to the student violated the constitutional rights of the student, established violations that cannot reasonably be characterized as being in good faith.

4. The facts showed a violation of Plaintiff's rights to "substantive due process," since the decisions to torture and expel Plaintiff were made on the basis of no evidence of the Morgan Board of Regents rules and regulations, and state violation a proxy of the right to be free from unlawful education prejudice and fear the "violation of constitutional rights" on the basis of his national origin and race, Africa.

5. Defendants believed The Sec. 6-401 et al. crim.law of the Ann. Code MD 26-102 extended the right to relitigate in federal court evidentiary questions arising in meeting {See Defendant Kenneth referenced to such meeting} proceedings or the proper construction of school regulations and was not intended to be a vehicle for federal-court correction of errors in the exercise of their' discretion that do not rise to the level of violations of specific constitutional guarantees.See.*Pierson v. Ray*, 386 U.S., at 557. A compensatory award will be appropriate since they acted with such disregard of the student's constitutional rights that their actions cannot reasonably be characterized as being in good faith. See. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943); *Goss v. Lopez*, 419 U.S. 565 (1975)

6.This Court's question the absence of a procedural due process was a violation in the ability of Morgan to exercise their discretion in a forthright manner to warrant the absence of a remedy for Plaintiff subjected to intentional deprivations. see. *Tenney v. Brandhove, Pierson v. Ray, and Scheuer v. Rhodes.*

7. In this case, Defendants, failed to apply the appropriate standard necessarily contains elements of both of an "objective" versus a "subjective" test of good faith.

8. Defendants actions probate result acts violating student constitutional rights which now can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual malice. [420 U.S. 308, 322]. They failed a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of the charges.

9. Such a standard imposes neither an unfair burden upon a person assuming a responsible public office requiring a high degree of intelligence and judgment for the proper fulfillment of its duties, nor an unwarranted burden in light of the value which civil rights have in legal system. Evidenced they are not be immune from liability for damages under 1983 since Defendants knew or reasonably should have known that the action they took within Plaintiff's sphere of official responsibility violated the constitutional rights of the Plaintiff to cause a deprivation of constitutional rights and other injury.

10. Defendants, an educational University and her administrators, subjected Plaintiff to the egregious and unlawful educational practice of forcing him, as a condition of his academic pursuit, to participate in and enforce a University policy and/or practice of accepting failure and torture as perceived to be of African race and national origin ("Policy").

11. Defendants' discriminatory Policy was against the faculty and students of Africans. On a regular basis, they were blocked and refused services in all potential academic services because of their national origin and race, African. This caused Plaintiff significant damages, severe emotional distress, physical injuries, and economic losses, pain, distress which forced him to have surgery, anxiety, and shame.

12. Plaintiff witnessed Morgan's students, faculty and other employees of all ranks, including the President, openly engage in and/or openly allow this Policy to thrive. The Policy continued even after Plaintiff at least one other African student and or faculty expressed their opposition to it.

13. The consequent hostile academic environment, discriminatory, bullying," physical and psychological abuse and expulsion labeled eminent security threat to the entire University, retaliation at the hands of Defendants forced other faculty/students to resign from their positions.

14. By virtue of the foregoing conduct, Defendants directly or indirectly, violated Titles VII and VI of the Civil Rights Act of 1964 42 USC 2000e *et sequel* 5(f)(3) and its implementing regulation at 34 C.F.R.§ 100.3 (b)(v). **(5)** Title IX of the Educations Amendments Act of 1972 and Equal Education Opportunity Act of 1974 of similar type and object.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, and 1345, 42 U.S.C. § 3614(a), and 15 U.S.C. § 1691e(h), as this case involves questions of federal law. This Court

also has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff seeks damages and a cause of action[1] and requests the honorable United States District of Maryland Court to reinstate him from dismissal from School on July 27th, 2016 for violation of his academic and civil rights.

16. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under [PROPOSED] Complaint in Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with his federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

17. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the Baltimore, and the Defendant resides and/or does business in Baltimore of Maryland. Defendants are subject to the personal jurisdiction of this Court because Defendants maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

18. Pursuant to Local Rule 3-2(d) of this District, assignment to this Court is proper because all or most of the events giving rise to Plaintiff's claims occurred in Baltimore City.

Prayer for Relief Wherefore, the Commission respectfully requests that this Court enter a final judgment:

### I. Factual Allegations

19. Defendant Morgan State University, a historically black College and State of Maryland's designated public urban university, is a corporation doing regular business including but not limited to its academic and other care services in Baltimore, at 1700 E. Cold Spring Lane Baltimore MD.

20. Defendant Morgan et al an "educator", and an employer with her "agents' within the meaning of the Titles VI, VII and IX, given to similarly situate other students. Defendants have broad discretion to make academic decisions in line with USA department of education claims, "Ensuring Every Student Succeeds

21. The Defendant's business also includes engaging with the procedure of the Administrative law, Decisions reviews, University Appeal Board, Discretion of delegated authority – Judicial review, Appeals, Standard of review the decisions regarding the availability of judicial review for Universities' discretionary decisions see *Gauthier and Jaffer*, Standard of Correctness, Universities and Damages, what policy changes, if any, will be implemented at those students and employees impacted.

---

[1] (1). Act of April 20, 1871, ch. 22, § 1, 17 Stat. 13. 2. 42 U.S.C. § 1983 (1976) provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (3). 403 U.S. 388 (1971) (violation of fourth amendment). (4). In *Davis v. Passman*, 99 S. Ct. 2264 (1979), the Court extended *Bivens* beyond the fourth amendment by implying a cause of action and a damages remedy under the equal protection component of the due process clause of the fifth amendment.

22. In 20003 Mwabira Simera presented three GPS papers to a GIS world Conference held at Towson University, Baltimore MD. Set world record in research that Dr. Morgan, president of the Conference and faculty member of Towson University suggested, Plaintiff could fit very well in PH. D program at Defendant Morgan University.

23. In 20003, Plaintiff submitted his transfer application, and transcripts from Howard University, World Education Service authentication to equal USA Bachelor of science, and documents related to a disability placement to Morgan State University et al, but denied on condition he improves his credits that he can transfer from Howard University to Morgan *et al* at a later date.

24. 20003-2005 Plaintiff volunteered in NOOA Research project at Defendant Morgan and successfully presented a paper in June 2004-; "Integration of Remote Sensing GPS and GIS for Planning management of environmental Ecosystems of sustainable development at the American Society of Limnology and Oceanography (ASLO) Summer Meeting at International Trade center, Savannah, Georgia, USA.

25. In about 2006, Defendant Morgan et al admitted Mwabira Simera as an undergraduate Student with double majors in Civil engineering and Transportation infrastructure, and submitted all relevant papers.

26. Around October 2008 to July 22nd, 2013, evidence will show Defendants Morgan, without Plaintiff's permission secretly imposed a surveillance over Plaintiff in violation of Fourth Amendment[2] rights against unreasonable search and seizure equal protection, and Ku Klux Klan Act of the Civil Rights Act of 1871 and the 1964 Civil Rights Act of 1964 Title VI *at 34 C.F.R.§ 100.3 (b)(v)* flawed claims, inflated him as applying to graduate school, submitting fraudulent papers and an eminent security threat.

27. Between 2010-2013 Defendants Garrison, Robinson, without Plaintiff's permission, continued secretly digging dirt by coercing other offices in and outside Morgan et al information about Plaintiff in violations of 42 U.S.C.S. § 1983, the offense to deprive an inhabitant of a state of his constitutional rights "under color of" any law in violation of Fourth Amendment rights against unreasonable search and seizure equal protection, and Ku Klux Klan Act of the Civil Rights Act of 1871 and the 1964 Civil Rights Act of 1964 Title VI at 34 C.F.R.§ 100.3 (b)(v)[3]

28. Secretly imposed a surveillance took on Courses transferred for the fulfillment of May 2013 BSC Graduation miraculously disappeared from the registration records.

29. The Civil Engineering Chairman/advisor forced to register for fall in fulfillment of 2013 BSC December Graduation added more courses for final courses.

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amdt, 4

[3] "...The Regulation Implementing Title VI at 34 C.F.R.§ 100.3 (b)(v) specifically prohibits a recipient Federal funds from treating an individual differently from others ...or condition which individuals must meet in order to be provided any service..."

5

30. (a). October 9, 2013, Sent a Request to Defendant Wilson, President Morgan State University and Defendant Turner, Assistant for their help to remove Defendant Garrison's "Hold on his account" and for Admission to graduate School and abusive environment. Never replied

b. Sent a humbly petition written Apology to both Defendants Wilson and Garrison quote;

> *"The President committed to reinvigorating the clemency authority, demonstrating that our University/nation is a University/nation of second chances, where mistakes from the past will not deprive deserving individuals of the opportunity to rejoin society and contribute to their families and communities, I have 37 children, wife and blind mother to take care of...".*

C. Defendant Garrison replied in defamation et al Defendant Garrison after secretly digging dirt by coercing WES violation of privacy rejected the application quote:

> *"...you submitted fraudulent documents to World Education Services (WES)... clearly indicate that falsified or inaccurate records disqualify the applicant for admission...Addressing application procedures in the School of Graduate Studies Catalog, 2010-2013, p. 39:"*
> *...you must desist from making such requests..."*

31. January 31st, 2014, took the spring/fall2013, registration history to support Professor Charles Oluokun's request for the change of the course CEGR 659 to CEGR 655 for the fall 2013. because of my mother's poisoning that ended in her death, affected my conscious that instead of registration CEGR 655 for the /2013, mistakenly registered CEGR 659 for summer 2013,

32. Realized being stalked on by Defendant Shire, who shared my meeting with Kristy Taylor to Defendant Garrison. In conspiracy with Defendant Garrison imposed sanctions over what they say is student's submission of fraudulent documents to WES to get in MSU graduate school, accusations Student denies as evidence will show.

33. On October 26th, 2013, Defendant Banks is accused of deliberately failed to use his moral authority to reinstate student and even when he was supposed to verify any information by reaching, did not

34. About February 3rd, 2014, Defendants Shire coerced Defendant Garrison who dictated to Dr. Kristy Taylor, Manager of Information and Operations, School of Graduates Studies, Morgan State University to inform Plaintiff of being banned from the School of Graduate Studies. Quote:

> *"...I have been encouraged my Dr. Mark Garrison (Dean of The School of Graduate Studies) to remind you that you are banned from The School of Graduate Studies..." No reason given.*

35. April 2nd, 2014, Dr. Kenneth Jackson (hereinafter "Jackson") was Vice President/Provost for Academic Affairs, on responding to Plaintiff's petition accompanied with the Dr. Kevin Banks, (hereinafter "Banks") VP for student affairs, revealed attending of a meeting where some people in the same meeting wanted to completely erase Plaintiff's file from Defendants Morgan record and that led into secret investigating unsubstantiated criminal allegations.

36. On February 26th, 2014, Defendant Jackson ignored the Civil Engineering Chair authorizations of the courses, but relied on to Dr. Mark Garrison putting 86-year suspension and hold on Plaintiff's records, denial of graduation and transcripts. Defendant Jackson has all needed evidence to this case.

37. In March 2014, Defendants Cooper-Garrison -Joan Robinson used tactics to block Plaintiff's progress, with no graduation and no transcripts till 2099, placed an "86 year Hold" on account that made difficult and cannot move to another school or seek employment.

38. It was more than pain as Defendants created hostile, abusive, stressed and depressed environment terrifying placed student under fear and traumatization since student has Post Traumatic Stress Disorder (PTSD[4]), and created especially stress affecting his work concertation at school, ended underwent surgery at the hospital. The surgery has left me in intensive medical condition with a neck fusion, hip fracture, chronical knees pain, hearing impairment, imbalance, difficulty in breathing and not taking anything by mouth but through the gastrological feeding till now.

39. Defendants Cooper-Garrison -Joan Robinson in effort to block Plaintiff's progress, placed an "86 year Hold" on account without graduation nor transcripts followed with "denial of access" to Morgan *et al* campus, vicious, barbaric, brutal and xenophobia torture that included, racist hate, over evaluation, retaliation, bullying, intimidation, and use of slurs by Defendants. Plaintiff's requests for re-admission to complete the four remains credits to his BSC, received no responses, and/or were denied.

40. Students Rights in the Academics study, protect personal privacy[i], and from blocking advancement. Repeatedly my moral panics is because of the Morgan SU abuse of Power

41. On the morning of August 15th, 2014 Mwabira Simera had just left the hospital, only dressed with a cervical collar to protect his neck fusion and strangling with his walker, had no gun, neither any signs of threatening anybody that included the Casher at the Bursar's Office where he paid the graduation fees, and the Library staff that handed him a key to library Locker.

42. On the morning of August 15th, 2014 Mwabira Simera met Defendants Kevin Banks and Kenneth Jackson on his way to pay for a locker in Library and register for his four credit courses for fulfillment of completion of December 2014 BSC graduation, at Montebello Complex at Defendants et al Morgan State University where he noticed stalking security officers, identified as Byrd ( admitted making a hot pursuit) who ordered him under false arrested, detained before another officer in civilian clothes identified as Wiggins Adrian J. Executive Director, Office of campus and Public Safety arrived, and served to Plaintiff with the notice of an "advisement of Denial of Access to Morgan State University buildings and grounds", that cited three parts of MD Codes of laws with a blank page explaining the reasons that failed to connect the crimes violated. The notice that carried fresh ink was reading a date of March 24th, 2019, not signed

---

[4] Post-Traumatic Stress Disorder (PTSD), and trauma; "When the trauma is inflicted by another person, is especially intense, or the traumatized person is extremely close to the trauma, the severity of traumatization may be especially profound," Robert C Scaer, MD, Author, The Body bears the Burden: Trauma, Dissociation and Disease Definition: -Post Traumatic Stress Disorder (PTSD) is a natural emotional reaction to a deeply shocking and disturbing experience. It is a normal reaction to an abnormal situation. PTSD is defined in DSM-IV, the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual. For a doctor or mental health professional to be able to make a diagnosis, the condition must be defined in DSM-IV or its international equivalent, the World Health Organization's ICD-10. PSTD,

43. These were a) "Phrase of "Bona Fide" as incorporated with reference to Section 6-401 et al. of the criminal Law Article of the Annotated Code of Maryland26-102 of the education Article.

(b) "Advises that, due to existence of emergency conditions, he/she is immediately and henceforth denied the right of access to the buildings and grounds of Morgan State University pending a hearing, if requested, and stands subject to arrest and prosecution if found in or upon the University premises.

(c) "Any person may appeal an advisement of the Denial of Access by addressing a written request for a hearing to Morgan State University, Hearing Officer, Room 411, Truth Hall Cold Spring and Hillen Road, Baltimore, MD 21252." Mwabira Simera who was paying for graduations and registration fees to complete his undergraduate civil engineering BSC[5] was a bona fide student falling in The Sec. 6-401 et al.

**Defendants Turner and Wilson set up Plaintiff for torture, Assault and Battery & Reckless Endangerment.**

44. Student did follow as directed on this notice section three but received no response from Morgan *et* al other than intimidation, bullying, continued harassment and torture was based on nakedly "racism, and hate".

45. On August 26th, 2014, pursuant to Institution Section 26-102 of the education Article to address the following egregious and persistent blocking, Plaintiff was on campus to appeal an advisement of Denial of Access to Morgan State University buildings and grounds

46. August 26th, 2014 with the instruction as per the message as evidence will show, Dr. Raymond Vollmer directed Plaintiff to forward to Dr. Birkram. Janak, Interim Vice President for Finance and Management attention and both his massage and my request are following each. Plaintiff 's attempt to lead to Ms. Stacey Benn forced Plaintiff under false arrest and escort of Sergeant who refused to identify herself, Officer Jones Evans and another Officer who refused to identify herself, held Plaintiff from 10 am to almost 12:pm and under heavy escort of Officer T. Byrd, Officers Jones Evens and Officer Evans to the public bus stop at the orders of Defendant Wiggins.

47. On or about March 2014, Plaintiff petitioned Morgan *et al* decisions to State of Maryland education department (see CT I) to reverse it. MD sent a copy to Office of Civil Rights by 09/19/15. Student did follow as directed on this notice but received no response from Morgan *et* al that lead to petitioning with the State of Maryland department of Education seeking re-admission consideration to continue the undergraduate studies at the University complaint raised in the following allegations:

a. The University discriminated against Plaintiff on the bases of race and national origin when, on March 25, 2014, it denied you access to University buildings and grounds;

---

[5] The Section 6-401 et al. crim.law of the Ann. Code MD 26-102 of the" which is embodied in MSU Guidelines on Demonstrations and Leafleting General Provisions:4,(j&k&l) (exhibit 5) states as follows: "…evidence that the person is a bona fide… has lawful activity to pursue at the University …

8

b. The University discriminated against Plaintiff on the basis of age and national origin by putting an 86-year suspension, hold without graduation and transcripts on Plaintiff's account;

48. The MD requested to know why and what happened between Plaintiff and Morgan *et al.*

49. Defendants attached two notable evidences from Defendants Cooper and Garrison accused Plaintiff of applying to graduate school to support their harsh, assault/torture, blocking and discriminatory practices.

50. These were only evidence to the MD Dept. Education, is a potential proponent to the allegations which are based on a violation of the First Amendment's guarantee of freedom of speech erased by MSU. Proofs of this knowingly Reckless disregard with surveillance were letters as revealed by Cooper and Garrison were:

49. Cooper's secret letter to American Collegiate Registrars and Admission Officer's International Education Association for re-evaluation of only Mwabira Simera's transcripts submitted in 2006 in support of undergraduate application among other tens of thousands of students transferred to Morgan. All transfers are based on §1. A.1. a. Policy from outside institutions.

50. Garrison claimed the harsh punishment are based on Plaintiff applying to Graduate School.

51. Morgan *et al* response to MD [Dr. Shawna Acker-Ball Director of Academics, Maryland Higher Education Commission (MHEC)] was that student should only submit his application for re-admission

52. February 2nd 2015, Plaintiff's requests for re-admission to complete the four remains credits to his BSC, the Registrar Defendant Hans Cooper called Campus security that arrested chased Plaintiff from the buildings leading to an appeal to President Wilson who directed it to Defendant Turner, but received no responses.

53. December 24th, 2014, The Department of MD education responding to Morgan *et al* promise of re-admitting, was a trap for vicious, barbaric, brutal and xenophobia assault ended into emergency admission with bleeding and a broken Gastrological feeding tube. Defendants et al Morgan rescinding the offer for the student re-admission to complete his studies. MD referred him to Court which is being filed.

54. On March 24th, 2015, on the phone Plaintiff recognized Defendant Cooper yelling and backing with loud voice that Student's paining ears and neck blocked the voice that Student handed back the phone to the Assistant and requested for some ice/water to cool his dry burning throat, increased, pain, coughing and tears. In less than one second, three MSU police officers stormed in Defendant Turner's office said "you're under arrest decided to grandiose, mass displays of MSU muscle and military grandstanding." This in Violations of Maryland Code Ann., Crim. Law § 3-201, 203, & 204.) Assault and Battery &

Reckless Endangerment, The Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act of 2009. Hate Crimes Prevention Act the Church Arson Prevention Act, 18 U.S.C. § 247 of 1996[6].

55. Because Plaintiff was in great pain and lost voice, and hearing, in writing, told the three Morgan et al security that communication will be in writing[7], at about 10.10am which MSU and Plaintiff did as evidence will show

56. In written request on a piece of paper, that stated: (i) Security officer's names, that they wrote names were: P/O Shepherdson, P/O Kevin Jones and P/O V. Mitchell,

(ii) Again no mention of the crimes Plaintiff is charged with, only blank pages.

(iii) Plaintiff wrote that he following up with the registration in completion of his BSC in civil engineering which followed Morgan et al response to Maryland Department of Education and Plaintiff showed them a copy of Defendant Turner attached to MD Dept. Education.:

57. On March 24th, 2015 Plaintiff in great pain, bleeding as feeding tube has been pushed out and broken,, and sensing death, refused to get in their car and crowed on my walker to the neutral road for safety and called Baltimore Police and ambulance which took me to Union Memorial Hospital in Baltimore city traumatized[8].

58. Baltimore Police which accompanied the ambulance which took me to Union Memorial Hospital, filed this police report as uses of excessive force that included a copy to Baltimore Human Rights Office.

**FIRST CAUSE OF ACTION: Retaliations and statements of facts**

59. 03/18/2016) only meeting revealed that Defendants Turner and Garrison had been responsible for orders that has created dummy activities that included torture, developing theory of lies of fraudulent documents, rescinding of admission and expulsion said complaints resulted in more discriminatory treatment for as Defendant Wiggins who praised the immunity and said quote:

*"...Simera will not and must not be admitted because he smeared University by filing complaints about his being assaulted and buttery and other accusations..."* (Security Wiggins, at a Denial hearing, 03/18/2016)

---

[6] *See, e.g., Boyd County High Sch. Gay Straight Alliance*, 258 F. Supp. 2d at 690 ("the Equal Access Act permits [a school] to prohibit Plaintiffs from meeting on equal terms with the noncurriculum-related student groups that have been permitted to meet… only upon a showing that Plaintiffs' *own* disruptive activities have interfered with [the school's] ability to maintain order and discipline.").

[7] "Fighting words" and "incitement" are the only exceptions to the general rule that students who express themselves are 'not responsible for the conduct -- disruptive or otherwise -- of other persons. - "Fighting words" are words which, when addressed directly to the average person, are clearly and inherently likely to provoke violent retaliation. *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942); *Street v. New York*, 394 U.S. 576, 592 (1969);

[8] "When the trauma is inflicted by another person, is especially intense, or the traumatized person is extremely close to the trauma, the severity of traumatization may be especially profound" Robert C Scaer, MD, Author, The Body bears the Burden: Trauma, Dissociation and Disease Persistent symptoms of increased arousal (not present before the trauma) as indicated by at least two of the following: 1. Difficulty falling or staying asleep 2. Difficulty concentrating. The disturbance causes clinically significant distress or impairment in social, occupational or other important areas of functioning. The focus of PTSD is a single life-threatening event or threat to integrity. Examples include: repeated violations such as in verbal abuse; regular intrusion and violation, both physical and psychological, as in bullying, stalking, harassment, domestic violence etc.

Under Titles VII and VI of the Civil Rights Act of 1964 42 USC 2000e et sequel 5(f)(3) and its implementing regulation at 34 C.F.R.§ 100.3 (b)(v). (2) Title IX of the Educations Amendments Act of 1972 [same treatment given to similarly situate other students]. (3) Equal Education Opportunity Act of 1974, (13)- Family educational and privacy rights Act 1974 U.S. Code › Title 20 › Chapter 31 › Subchapter III › Part 4 › § 1232g, clause (iii) of subparagraph (C), (i) - (ii), paragraph (5) of subsection (a) of this section), (1)(A), clauses (A) and (C) of paragraph (1), Clause (B) paragraph (2)(A), paragraph (1)(F) (14) The Higher Education Act of 1965as referred to in subsec. (i)(1), (4) Pub. L. 89–329, Nov. 8, 1965, 79 Stat. 1219, chapter 28 (§ 1001 et seq.) of this title and part C (§ 2751 et seq.), Deformation per se Tort 808, and (5) constitutional rights under the Due Process Clause of the Fifth Amendment of the United States Constitution

60 that when Defendants' policies did reflect intent to a violation of the First Amendment's guarantee of freedom of speech confirming that Mwabira was the victim of "reverse discrimination", as compared to similarly situated students as a retaliation bring this suit under 42 U.S.C.

60. Several Students made fun of plaintiff yet Defendant filed false charges against plaintiff and failed Plaintiff on the basis of his [filthy jungle/forest] African national origin. Pursuant to The Code of Maryland State Board of Education Regulation §13A.01.04.03. School Safety and Maryland Code Annotated, Criminal Law §3-607. Hazing defines bullying[9]

61. All students in Maryland's public schools, without exception and regardless of race, ethnicity, region, religion, gender, sexual orientation, language, socioeconomic status, age, or disability, have the right to educational environments that are:

(A). Safe;

(B). Appropriate for academic achievement; and

(C). Free from any form of harassment.

of the First Amendment's guarantee of freedom of speech confirming that Mwabira was the victim of "reverse discrimination", as compared to similarly situated students as a retaliation.

60. July 22nd, 2016, Don-Terry Veal in conspiracy with Defendants Barber and Wiggins wrote to confirm permanently "hold" without transcripts and graduation and barred from Morgan State

62. On June 16th, 2019, the Baltimore Human Rights informed Plaintiff that Morgan State University claimed immunity from damages[10]

---

[11] In the UK at least 16 children kill themselves each year because they are being bullied at school. This figure is established in the book *Bullycide: death at playtime*. Each year 19,000 children attempt suicide in the UK - one every half hour. In the UK, suicide is the number one cause of death for 18-24-year-old males. Females also attempt suicide in large numbers but 9 tend to use less successful means.

[10] The Court of Appeals, held citing United States Supreme Court *Wood v. Strickland*(1975) No. 73-1285Argued finding that the facts showed a violation of respondents' rights to "substantive due process," since the decisions to expel respondents were made on the basis of no evidence that the regulation had been violated, reversed and remanded for appropriate injunctive relief and a new trial on the question of damages. Held: 1. While on the basis of common-law tradition and public policy, school officials are entitled to a qualified good-faith immunity from liability for damages under 1983, they are not immune from such liability if they knew or reasonably should have known that the action they took within their sphere of official responsibility would violate the constitutional rights of the student affected, or if they took the action with the malicious intention to cause a deprivation of such rights or other injury to the student... compensatory award will be appropriate only if the school officials

11

63. By the actions and statements described above, the Defendants stated "Mwabira must not be admitted because he smeared University by filing complaints about his being assaulted and buttery and other accusations..."(Security Wiggins, at a Denial hearing, 03/18/2016)

Several Students made fun of plaintiff yet Defendant filed false charges against plaintiff and failed Plaintiff on the basis of his [filthy jungle/forest] African national origin. Pursuant to The Code of Maryland State Board of Education Regulation §13A.01.04.03. School Safety and Maryland Code Annotated, Criminal Law §3-607. Hazing defines bullying[11], bullying as follows:

64. Defendants Shire stalking on Plaintiff was in conspiracy with Defendant Garrison that constituted Morgan for maintaining an abusive, hostile academic and work environment in violation of State of Maryland Art. 27 ' 124. Stalking. 1998.a (1 to 3) (1) for a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose, approaching and pursuing Plaintiff with intent to place the Plaintiff in reasonable fear: Plaintiff was forced to change departments.

65. Defendant Morgan *et al* On March 18th, 2016," denial of Access Healing" and subsequent July 22nd, 2016 letter confirmed the denial of ADA to Plaintiff as evidence will show based on Defendant Morgan *et al* policies and regulations pp60 of Student Handbook.

66. These accounts are relevant in support of Mwabira's authentication of Morgan *et* al 's egregious and consistent culture and customs of discrimination, deformation, harassment, and bullying conspiracy under color of law that constitute admissible evidence described in Rule 901(a)[12].

**Count IX Abuse of Process**

67. University Rules and Regulations give Defendant Wilson ultimate power of appointing and deciding decisions Committees. They failed to take measures to rectify the situation but instead continued hurting, re-injury, the harassment, a direct abuse of process and a tactical delay, which caused *irreparable injuries*. The delay contributed to the reject of the Plaintiff's petition is complacent now that lead to emergency hospitalization at Memorial Hospital for more about 12 hours and continues to suffer because of belonging to African race.

68. On March 24th, 2015 Defendants in conspiracy with Wilson, Defendant Farrar Linda, Turner rescinded the December letter to deflect the March 24th, 2015 incidences.

---

acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that their action cannot reasonably be characterized as being in good faith.

[11] "Bullying" occurs when you are repeatedly harassed or intimidated by another student. Bullying includes threats and nasty remarks as well as physical actions like pushing or hitting, written conduct, and damaging your property.

[12] [R]equires that the evidence can be authenticated or identified "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid 901(a).

12

For Counts in which defendant Wilson is charged with failure to keep a Student from harm, the requisite specific intent is the intent to deliberately not take action to prevent defendants Robinson-Turner-Garrison-Cooper from traumatizing Student. A person ordinarily intends all the natural and probable consequences of an act knowingly done.

69. Discriminated in the terms, conditions, or privileges of Defendant Morgan is responsible under conspiracy, and color of Institution law for all acts performed by Defendants employees, and agents by virtue of the doctrine of respondent superior and/or by virtue of common law negligence, carelessness and recklessness in failing to properly train and supervise these agents to enable Plaintiff successful completion of the student studies

70..This contrary to Members of the Board of Regents to offer a chance at MSU Board of Regent's mercy Pursuant to The MSU Board of Regents statement:

*"...We value good governance through trust, accountability, and integrity!"*-199.Set forth Morgan State University "Affirmative Action and Equal Opportunity Policy Statement" which states:

*"...It is the policy of Morgan State University that all employees and students should be able to enjoy and work in an educational environment free from discrimination. Discrimination against any person or group of persons on the basis of race, color, national origin, religion, sex, sexual orientation, age, marital status or disability is prohibited by this Policy. Any employee, student, student organization, or person privileged to work or study at Morgan State University who violates this policy will be subject to disciplinary action up to and including permanent exclusion from the University..."*

71.Plaintiff has pleaded not guilty to accusations that he conspired with anybody from Makerere University Kampala, Uganda to submit fraudulent papers to World education services. Invoking Moral Reasons or Censorship of Explicit Content:

*The Act guarantees schools' right "to protect the well-being of students and faculty."[13] And the U.S. Supreme Court has recognized that public schools may restrict students' access to and expression of obscene or sexually explicit material to protect students. But the Act does not permit schools to ban a group based on school officials' general moral disapproval or on assumptions about the content of speech at group meetings... A school ... violate the Act by excluding a group based on the fact that it addresses issues of interest to members of a minority faith ...students[14]... understanding that "education record" was intended to encompass "everything in institutional records maintained for each student in the normal course of business and used by the institution in making decisions that affect the life of the student." 20 U.S.C. § 1232g(f) ("[A] cations to terminate assistance may be taken only if the Secretary finds there has been a failure to comply with this section, and he has determined that compliance cannot*

---

[13] 20 U.S.C. § 4071(f) (2010) (stating that "nothing in [the Act] shall be construed to limit the authority of the school, its agents, or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary").

[14] *See Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd.*, 483 F. Supp. 2d 1224, 1229 (S.D. Fl. 2007) (rejecting school district's assumption that a gay-straight alliance is a "sex-based" club, after examining club's stated purposes of promoting tolerance and providing a safe environment for students, and concluding that school district failed to establish that it would be involved in "accessing or sharing with other students obscene or explicit sexual material; rather, this appears to be an assumption or conclusion derived from the name of the club").

be secured by adequate means. Information that is obtained through personal knowledge or observation, meeting records are confidential unless every participant executes a FERPA waiver..."

The US Supreme Court ruled:

> "any suspension requires prior notice of the charges and a hearing guaranteed under Constitutional rights" which Mwabira was denied student, is under pariah.

72. Further defamatory damage was when using a Policy on Academic Dishonesty, Morgan *et al made a gospel of reality against Plaintiff* for expulsion from the University which is a permanent separation from the University was a false damaging defamatory statement and circulated in all of the following:

(a) Published the report of Plaintiff involved in:

(b). Lying with regard to an academic requirement to Morgan et al Admissions. Plaintiff denied making any oral or written statement which he knew, or should know, to be untrue.

(c) Defendant Mark Garrison a natural person is, Dean of Graduate Studies harsh rhetoric allegations affirmed by Dr. Kevin Banks, Vice President, Student Affairs and Keith H. Jackson, Interim Provost & Vice President for Academic Affairs denying Plaintiff a graduate study at Morgan State University Reviewing the following with respect to the attached to World Education Services (WES Re#:610898/sII,11-Nov-2010 pending) which was not copied to you [MSU] containing a non-ambiguous language and reads as follows:

> "...Document Verification notification...after an initial review, we have determined that must be verified by the institution that issued them.. file has been placed on hold..."

73. This is harming that Plaintiff requests the courts to consider these are the elements necessary to prove a case of defamation in Maryland that Defendant Morgan *et al* through her potential illegal secret committee members were further damage directly involved in is as follows:

74. Evidence will show that illegal secret investigation covered a wide large of spectrum which include fishing information from World Education Services proves that

:(a) That the expulsion of Plaintiff based on claimed "Fraudulent and eminent security threat," defendant made a defamatory statement to a third person,

(b) that the statement was false,

(c) that the defendant was legally at fault in making the statement, and

(d) that the plaintiff thereby suffered harm under defamatory statement which tends to expose Plaintiff to public scorn, hatred, contempt and ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.

Plaintiff also alleges that he was a party to valid fiduciary contracts with Morgan State University School of in the form of contracts of academic agreement and its subsequent amendments.

74. Plaintiff also alleges in his complaint that Morgan State University breached all three of the above-mentioned contracts and breached their fiduciary contracts as public servant.

14

75. As evidence will show, the presidential transformed power strength of their historically system ended up for Defendant Garrison into a liability reinforcing concerns on determining Plaintiff's future.

a. March 18th, 2016 Defendants only meeting with Plaintiff, revealed by Defendant Wiggins' service of denial of access, march 24th, 2015 torturing of Plaintiff Defendants Turner in conspiracy with Garrison, were orders directly from Garrison, policy of hostility Defendants did not want dialogue.

b. Discriminated in the terms or conditions of Defendant Wilson denied the Plaintiff's petition for re-admitting student to complete his studies in the only four remaining credits based on his abusive environment which is not done to similarly situated students. Plaintiff has complied with all conditions precedent to filing suit under the perjury, as part of this Compliant.

c. Defendants are in violations of their own policy as referenced to MD Code 26-102 and also U.S. Code Title 20, Chapter 52, Subchapter VIII. § 4071 - which states:[15]

d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Sections 804 and 805 of the was the best way to relief their hate and anger racism was to beat him to compensated for a fair trial was in violation of his rights based on the Fourteenth Amendment's due process clause. The US Supreme Court ruled

> *"any suspension requires prior notice of the charges and a hearing guaranteed under Constitutional rights"* which Mwabira was denied.

76. The Defendant's conduct constitutes: a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Title IX of the Educations Amendments Act of 1972 ; under Equal Education Opportunity Act of 1974.or

77. A denial to a group of persons of rights granted by the Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974.which denial raises an issue of general public importance, have been injured by the Defendant's discriminatory conduct. The Plaintiff is aggrieved as defined in 42 U.S.C. § 3602(i), and have suffered damages as a result of the Defendant's conduct.

78. The Defendant's conduct was intentional, willful, and taken in reckless disregard of the rights of others.

79. Mwabira Simera seek lasting policy solutions for economic and racial justice, permanently enjoining and restraining Morgan State University, its agents, servants, employees and attorneys and all persons in active concert receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Title IX of the Educations Amendments Act of 1972, Equal Education Opportunity Act of 1974, Morgan State University Board of Regents on Page 39 of the graduate school Cat 2013, The

---

[15] U.S. Code Title 20, Chapter 52, Subchapter VIII. § 4071 - which states: (a) …it shall be unlawful for any public secondary school which receives federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students…"

15

Federal Regulations at 34 C.F.R., the 20 U.S. Code § 1232g, Family educational and privacy rights Act 1974 U.S. Code › Title 20 › Chapter 31 › Subchapter III › Part 4 › § 1232g, clause (iii) of subparagraph (C), (i) - (ii) , paragraph (5) of subsection (a) of this section) , (1)(A), clauses (A) and (C) of paragraph (1) ,Clause **(B)** paragraph (2)(A), ; paragraph (1)(F), The Higher Education Act of 1965as referred to in subsec. (i)(1), (8) Pub. L. 89–329, Nov. 8, 1965, 79 Stat. 1219, chapter 28 (§ 1001 et seq.) of this title and part C (§ 2751 et seq.) of subchapter I of chapter 34 of Title 42, The Public Health and Welfare.

## II. SECOND CAUSE OF ACTION: Equal Education Opportunity Act of 1974

80. By the actions and statements described above, the Defendant has discriminated on the basis of sex against applicants with respect to credit transactions, in violation of Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974.

81. The Defendant's conduct constitutes a pattern or practice of discrimination in violation of rights protected by Titles VII and VI of the Civil Rights Act of 1964 42 USC 2000e et sequel 5(f)(3) and its implementing regulation at 34 C.F.R.§ 100.3 (b)(v), and Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974 and have suffered damages as a result of the Defendant's conduct.

82. The Plaintiff has been injured by the Defendant's discriminatory conduct and aggrieved Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974.

83. WHEREFORE, the Plaintiff prays that the Court enter an Order that:

i. Counts 1- XV - Conspiracy to Deprive Constitutional Rights - 18 U.S.C. § 241

ii. Plaintiff has shown that the defendants injured, interfered with and intimidated Plaintiff

iii. Plaintiff has shown that Defendants Acted Because of the Plaintiff's Race and National Origin and Because Morgan et al were Engaged in a Federally Protected Activity.

vi. Given the existence of the defendant's motive to interfere, denied, and dismiss Plaintiff's completion and enjoyment of a University because of the Plaintiff's race, and national origin, the presence of other motives, such as Defendants' anger, does not make Defendants' conduct any less a violation of 18 U.S.C. §245. *United States v. Johns*, 615 F.2d 672 (5th Cir. 1980); Defendants Acted Willfully and purposely. see Griffin, 525 F.2d 710; Price, 464 F.2d 1217. *United States v. Kato*, 878 F.2d 267, 270-71 (9th Cir. 1989) *United States v. Price*, 383 U.S. 787 (1966).*United States v. Guest*, 383 U.S. 745 (1966).

   a) Defendants Morgan et al conspired oppressed, assaulted, blocked, stalked and intimidated Plaintiff and the defendant made a defamatory communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third persons

   b) The conspiracy denied Plaintiff the free exercise and enjoyment of a school protected by

16

v. Since Defendants Wilson David opened the show in a defamation case unfairly went after student accused of fanning the false narrative of a fraudulent and security terror threat, an Attack on Due Process at Morgan State University campus and all activities were ordered by him. This case seeks for the "rescue" Justice to suppressed, and targeted poor Africans. Promulgating regulations beyond its statutory authority, invoking erroneous data, and fanning the false narrative of a ' fraudulent and Security Terror Threat culture' on campus, Defendants Morgan et al, top faculties of the universities were directed to aggressively pursue all possible real or fiction Mwabira-Simera misconduct allegations under Title IX, the federal civil rights/state law that to ban student or expulsion created a regime of kangaroo justice as evidence will show. Not even a single event of the evidence shows that Mwabira Samara's campus violence offenses were, and, or are prosecuted locally, by the Federal Bureau of Investigation/Ant-Unit-Terrorism agency, state, Baltimore City Police/security which is situated on Morgan Campus, and Morgan Police, which handles terrorism, extreme violence child exploitation cases as claimed by Morgan Defendants has not been documented at campus, state, and federal records as evidence will show that Defendants dug up dirt on student, committed perjury for procuring fraud, defendant's willful, intentional, and callous invasion of the privacy of plaintiffs, and indifference to violation of Plaintiffs rights.

84. (a)Plaintiff Purporting to assert a cause of action [420 U.S. 308, 310] under 42 U.S.C. 1983, and claiming that his federal constitutional rights to due process were infringed under color of state law by his expulsion from the Morgan State University on the grounds of their violation of a school regulation prohibiting the application to graduate school, and claimed imminent security threat to school. The complaint as amended and later refiled, pray for compensatory and punitive damages against all Defendants, injunctive relief allowing Plaintiff to resume attendance, preventing Defendants from imposing any sanctions as a result of the expulsion, and restraining enforcement of the challenged regulation, declaratory relief as to the constitutional invalidity of the regulation, and expunction of any record of their expulsion.

(b). Facts show a violation of Plaintiffs' rights to "substantive due process such that Section 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations and was not intended to be a vehicle for federal-court correction of errors in the exercise of Morgan's discretion that do not rise to the level of violations of specific constitutional guarantees.

**. REMEDY**

84. WHEREFORE, the Plaintiff prays that the Court enter an Order that:

. Declares that the hate, racism and discriminatory practices of Defendants, as set forth above, violate the Titles VII and VI of the Civil Rights Act of 1964 42 USC 2000e *et sequel* 5(f)(3) and its implementing regulation at 34 C.F.R.§ 100.3 (b)(v), and Title IX of the Educations Amendments Act of 1972 ; under Equal Education Opportunity Act of 1974.;under Section 504 of the Rehabilitation Act of 1973, Retaliation under Title VII of Civil Rights Act of 1964, as amended (sec.704 (a)), under the Americans with Disability Act of 1990 (ADA), 42 USCA Section 12101 *et sequel,* under elements Deprivation of Rights Under Color of Law, under the statutory provisions of the Administrative Procedure Act, 5 U.S.C §§ 554(b), 555(b), 555(e), and 701 *et seq.* This person is aggrieved applicants as described under Equal Education Opportunity Act of 1974, U.S.C. § 1691e, and have suffered damages as a result of the Defendant's conduct.

## PRAYER FOR RELIEF

89. WHEREFORE, the Plaintiff requests that the Court enter an Order that:

a. Declares that the Defendant's discriminatory practices violate the Titles VII and VI of the Civil Rights Act of 1964 42 USC 2000e et sequel 5(f)(3) and its implementing regulation at 34 C.F.R.§ 100.3 (b)(v), and Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974.;

b. Enjoins the Defendant, his agents, employees, and successors, and all other persons in the active concert or participation with him from Discriminating on the basis of race and place of origin, including engaging in harassment, in any aspect of the education rights

i) Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of education rights granted or protected by the Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974;

(ii). Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendant's past unlawful practices to the position they would have been in but for the discriminatory conduct; and

(iii) Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendant's unlawful practices; The Defendant's conduct constitutes a pattern or practice of hate, racism, and discrimination in violation of rights protected by ECOA, 15 U.S.C. §§ 1691, et seq.

c. Awards monetary damages to each person aggrieved by the Defendant's discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

d. Assesses civil penalties against the Defendant to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of education rights granted or protected by the Title IX of the Educations Amendments Act of 1972; under Equal Education Opportunity Act of 1974;

iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendant's past unlawful practices to the position they would have been in but for the discriminatory conduct; and

iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any hate, racist and discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendant's unlawful practices;

c. Awards monetary damages to each person aggrieved by the Defendant's discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

d. Assesses civil penalties against the Defendant to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

c Ordering Morgan State University to re-instate the student to complete his studies and pay a civil monetary penalty pursuant to Section 21 (d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

Plaintiff further prays for such additional relief as the interests of justice require. See. *Booker v. City of Atlanta*, 776 F.2d 272 (11th Cir. 1985) Cir.1985) (officers' presence aided unlawful repossession by giving repossession appearance of legality and by intimidating plaintiff into not exercising right to resist).

Awards monetary damages to each person aggrieved by the Defendant's discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

d. Assesses civil penalties against the Defendant to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

e. Granting such other and further relief as the Court deems just and proper, including such equitable relief that may be appropriate or necessary for the benefit of students.

**Plaintiff hereby requests a trial by jury in this matter:** Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted

Samuel H. Mwabira-Simera
4 E University Parkway, #ERICA,
Baltimore, MD 21218
(202)-641-0556
Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the Plaintiff's motion, was mailed by US Post Office return process on 11/8/2019 to all parties through the Office of the President, Morgan State University, Truth Hall: Suite 400, 1700 E.Cold Spring Lane, Baltimore MD 21251

Respectfully submitted

Samuel H. Mwabira-Simera

PLEASE, HARD HEARING. SPEAK SLOWLY & LOUDER