IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAMUEL H. MWABIRA-SIMERA | * | |
| *Plaintiff* | * | |
| v. | * | Civil Action No.: 1:19-cv-03320-RDB |
| MORGAN STATE UNIVERSITY, *et al.* | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

Defendants Morgan State University (the "University") and certain of the nineteen current and former University employees (the "Individual Defendants")[1], by their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5) and 12(b)(6), hereby submit this Memorandum of Law in Support of Defendants' Motion to Dismiss. For the reasons set forth below, Plaintiff's complaint should be dismissed with prejudice.

**<u>INTRODUCTION</u>**

Plaintiff was a student at the University. Although the allegations of his complaint are not entirely clear, Plaintiff appears to assert various claims based on his expulsion from the University

---

[1] The Individual Defendants are David Wilson, Linda Farrar, Don Terry-Veal, Tanyka Barber, T. Joan Robinson, Kevin Banks, Raymond Vollmer, Bickram Janak, Stacey Benn, Kenneth Jackson, Kara Turner, Mark Garrison, Shire Williams, Hans Cooper, Adrian Wiggins, and University Police Officers T. Byrd, Shepperson, Kevin Jones and V. Mitchell – all of whom are current or former employees of the University. Undersigned counsel from the Office of the Attorney General of Maryland currently represent, and this motion is being filed on behalf of, Defendants Banks, Barber, Farrar, Garrison, Jackson, Robinson, Shepperson, Turner, Vollmer and Wilson. Undersigned counsel has attempted to contact the other Individual Defendants (primarily former employees) and may eventually represent some or all of them in this litigation if requested. In any event, the grounds for dismissal of the complaint as set forth in Defendants' Motion apply equally to each of the Individual Defendants and, in order to avoid confusion and promote judicial efficiency, the complaint should be dismissed in its entirety as to all Defendants.

in October 2013 because of the University's belief that Plaintiff had submitted fraudulent documents to an academic credentialing service.  Specifically, Plaintiff appears to assert claims under Titles VI and VII of the Civil Rights Act of 1964, the Equal Educational Opportunities Act of 1974 ("EEOA"), the Family Educational Rights and Privacy Act of 1974 ("FERPA"), the Higher Education Act of 1965 ("HEA"), Title IX of the Education Amendments Act of 1972, constitutional claims under 42 U.S.C. § 1983, and common law claims of defamation, breach of contract and abuse of process.  Plaintiff seeks monetary and prospective injunctive relief.

Defendants are entitled to dismissal of Plaintiff's complaint in its entirety, with prejudice. Initially, Plaintiff cannot assert claims under Title VII because he is not, nor has he ever been, employed by the University.  Additionally, Plaintiff's EEOA claims fail because the EEOA does not apply to institutions of higher education like the University.  Furthermore, Plaintiff's FERPA and HEA claims should be dismissed because neither statute provides a private right of action.

Plaintiff's remaining claims under Title VI, Title IX, 42 U.S.C. § 1983 and Maryland law should be dismissed because they are plainly barred by the applicable statutes of limitations. Moreover, even if they were not time-barred, they should be dismissed for failure to state a claim and/or lack of subject matter jurisdiction.

Finally, the Court should dismiss Plaintiff's complaint because Plaintiff has failed to properly effect service upon the University and all but one of the Individual Defendants.

For these reasons, Plaintiff's complaint should be dismissed with prejudice.

## **PROCEDURAL HISTORY**

Plaintiff's instant lawsuit is the second suit that he has initiated against the University and its current and former employees based on events surrounding his enrollment as a student at the University.  In May 2010, Plaintiff filed a complaint in the Circuit Court for Baltimore City,

Maryland (Baltimore City Circuit Court Case No. 24C09007385) against the University and seven current and former University officers and employees. In June 2010, the defendants removed the suit to this Court. *See* Case No. 1:10-cv-1497-ELH (referred to herein as "*Mwabira-Simera I*"). This Court noted that the "essence of [P]laintiff's complaint [was] that, as a student at Morgan State, he was the victim of a 'racially discriminatory graded course,' and that he was 'failed based on disability, race, and filth [*sic*] place of origin.'" *Mwabira-Simera I*, ECF 76 at 2. On September 30, 2010, the Court granted defendants' partial motion to dismiss Plaintiff's complaint (*see Mwabira-Simera I*, ECF 12), and dismissed Plaintiff's Title VII discrimination, retaliation and harassment, stalking and harassment, abuse of process, Administrative Procedure Act, criminal conspiracy and Fifth Amendment claims. On March 26, 2013, the Court entered summary judgment in favor of the defendants as to Plaintiff's remaining claims in *Mwabira-Simera I*. *Mwabira-Simera I*, ECF 76.[2]

On November 19, 2019, Plaintiff commenced the instant lawsuit against the University and the Individual Defendants.[3]

---

[2] In addition to his suits against the University and its current and former employees, Plaintiff has filed a plethora of lawsuits against other defendants based on allegations similar to those in his instant complaint. For instance, in *Mwabira-Simera v. Howard Univ.*, Civ. No. RWR-05-441 (D.D.C.), Plaintiff alleged that Howard University had violated his rights under, *inter alia*, Title VI, Title VII and Title IX based on his dismissal from a graduate program because of poor academic performance. Additionally, as this Court observed in *Mwabira-Simera I*, Plaintiff has filed numerous other suits against defendants alleging discrimination based on the same "surprisingly consistent and idiosyncratic" slurs based on Plaintiff's national origin and race. *Mwabira-Simera I*, ECF No. 76 at 13.

[3] Plaintiff has made three other attempts to sue the University and its employees. On December 21, 2016, Plaintiff attempted to commence a lawsuit against the University and its current and former employees in the Circuit Court for Baltimore City (Baltimore City Circuit Court Case No. 24C16006945). However, the court denied Plaintiff's motion for a waiver of the filing fee and did not allow Plaintiff's suit to proceed when he failed to pay the fee. In 2017, Plaintiff made a second attempt to bring a lawsuit against the University and its current and former employees in the Circuit Court for Baltimore City (Baltimore City Circuit Court Case No.

## **FACTUAL BACKGROUND**[4]

Although the factual allegations in the complaint are difficult to decipher, it appears that Plaintiff's claims are based on his enrollment as a student at the University and subsequent expulsion therefrom. Plaintiff was at no time an employee of the University, and nowhere in the complaint does Plaintiff allege the existence of an employment relationship.

According to Defendants' reading of Plaintiff's instant complaint, Plaintiff was admitted to the University as an undergraduate student in around 2006. Compl. at ¶ 25. Plaintiff alleges that between October 2008 through July 22, 2013, the University "secretly imposed a surveillance over Plaintiff" in violation of the Fourth Amendment, although he does not specify the nature of such surveillance. Compl. at ¶ 26. Additionally, Plaintiff alleges that between 2010 and 2013, Defendants Garrison and Robinson "continued secretly digging dirt . . . information [*sic*] about Plaintiff in violations [*sic*] of 42 U.S.C. § 1983." Compl. at ¶ 27.

It appears that Plaintiff alleges that he was forced to register for courses in Fall 2013, and that sometime before October 2013, Defendant Garrison placed a hold on Plaintiff's account. Compl. at ¶¶ 29-30. Plaintiff alleges that on October 19, 2013, he requested that the University

---

24C17001409), but the court again denied Plaintiff's request for a waiver of the filing fee, noting that Plaintiff's complaint "appear[ed], on its face, to be frivolous." Plaintiff appealed the circuit court's decision to the Court of Special Appeals of Maryland, which affirmed the lower court's decision to deny Plaintiff's motion for a filing fee waiver on the basis that Plaintiff's complaint was frivolous. *See Mwabira-Simera v. Morgan State Univ.*, No. 283, 2019 WL 5850432, at *3 (Md. Ct. Spec. App. Nov. 7, 2019). On August 8, 2019, Plaintiff filed a 35-page complaint against the University and its current and former employees in this Court. *See Mwabira-Simera v. Morgan State Univ.*, Case 1:19-cv-2275-CCB. On September 10, 2019, the Court ordered Plaintiff to file an amended complaint "with brief, concise and clear factual allegations." Case 1:19-cv-2275-CCB, ECF 3. Plaintiff failed to do so, and the Court dismissed his complaint without prejudice on October 8, 2019. Case 1:19-cv-2275-CCB, ECF 4.

[4]For the purposes of this Motion only, Defendants accept as true, but do not concede the truth of, the non-conclusory allegations in Plaintiff's complaint.

remove the hold on Plaintiff's account and that, in response, Defendant Garrison defamed Plaintiff by asserting that Plaintiff was being excluded from the University because he "submitted fraudulent documents to World Education Services (WES)."  Compl. at ¶ 30.[5]

Plaintiff further alleges that on February 3, 2014, Dr. Kristy Taylor, Manager of Information and Operations, School of Graduate Studies, informed Plaintiff that he was banned from the University's School of Graduate Studies.  Compl. at ¶ 34.  Subsequently, on February 26, 2014, Defendant Jackson allegedly placed an "86-year suspension and hold on Plaintiff's records."  Compl. at ¶ 36.

On March 25, 2014, Plaintiff was denied access to the University building and grounds.  Compl. at ¶ 47(a).  On August 15, 2014, Plaintiff came to the University's campus where he was placed "under false arrested [*sic*]" by Defendant Byrd and provided a "notice of an 'advisement of Denial of Access to Morgan State University building and grounds'" by Defendant Wiggins.  Compl. at ¶ 42.  The notice, which was dated March 24, 2014,[6] advised Plaintiff that "due to existence of emergency conditions, [Plaintiff] is immediately and henceforth denied the right of access to the buildings and grounds of Morgan State University pending a hearing, if requested, and stands subject to arrest and prosecution if found in or upon the University premises."  Compl. at ¶ 43(b).  The notice further advised Plaintiff that he could appeal the advisement of Denial of Access by sending a written request to the University.  Compl. at ¶ 43(c).

---

[5] WES is a non-profit organization that provides academic credentialing for international students seeking to participate in academic programs in the United States and Canada.  *See* WES, *About WES*, https://www.wes.org/about-wes/ (last visited April 3, 2020).

[6] Plaintiff alleges in paragraph 42 of his complaint that the advisement of Denial of Access was dated March 24, 2019.  However, elsewhere in the complaint he alleges that he was denied access to the University on March 25, 2014, which is consistent with his other allegations of misconduct against Defendants.  *See* Compl. at ¶¶ 41-42, 45-47.  Accordingly, it appears that Plaintiff incorrectly stated the date of the advisement of Denial of Access in paragraph 42.

On August 26, 2014, in direct violation of the March 24, 2014, advisement of Denial of Access, Plaintiff came to the University's campus, where he was allegedly placed under "false arrest" by Defendants Benn and Evans and two other unidentified University employees. Compl. at ¶¶ 45-46. Defendants Byrd and Evans escorted Plaintiff to a public bus stop at the direction of Defendant Wiggins. Compl. at ¶ 46.

## STANDARD OF REVIEW

Under Rule 12(b)(1), Plaintiff bears the burden of proving subject matter jurisdiction. *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The Fourth Circuit has affirmed that sovereign immunity is a jurisdictional bar. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.") (citation omitted); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

Under Rule 12(b)(6), the Court should grant a motion to dismiss when the complaint fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the well-pled factual allegations are accepted as true, the Court "need not accept the legal conclusions drawn from the facts, and . . . need not accept as true

6

unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

## ARGUMENT

I. **PLAINTIFF'S TITLE VII CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT EMPLOYED BY THE UNIVERSITY.**

Plaintiff asserts that Defendants "directly or indirectly" violated Title VII. Compl. at ¶ 14. Title VII prohibits discrimination in *employment*. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer. . . ."). Plaintiff does not allege that he was employed by the University or any of the Individual Defendants. Accordingly, in the absence of any employment relationship, Plaintiff's Title VII claims should be dismissed.

II. **THE EQUAL EDUCATIONAL OPPORTUNITIES ACT DOES NOT APPLY TO THE UNIVERSITY.**

Plaintiff appears to assert claims under the EEOA. However, the EEOA "does not impose any obligation upon state higher education systems or authorities." *U.S. v. LULAC*, 793 F.2d 636, 649 (5th Cir. 1986). Rather, the EEOA "is limited in effect to the activities of state and local educational agencies at the elementary and secondary levels." *Id.* Thus, because the EEOA does not apply to institutions of higher education like the University, Plaintiff's EEOA claims should be dismissed.

III. **PLAINTIFF'S FERPA AND HEA CLAIMS SHOULD BE DISMISSED BECAUSE THERE IS NO AVAILABLE PRIVATE RIGHT OF ACTION.**

Plaintiff references FERPA and the HEA in his complaint. *See* Compl. at 1, 11, ¶ 79. To the extent that Plaintiff is asserting any claims under FERPA or the HEA, such claims should be dismissed because neither statute provides a private right of action. *See Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 496 (D. Md. 2015) ("FERPA . . . does not provide a private right of action."); *McCulloh v. PNC Bank Inc.*, 298 F.3d 1217, 1221-25 (11th Cir. 2002) (finding there is no express

or implied private right of action under the HEA and noting that "nearly every court to consider the issue in the last twenty-five years has determined" the same) (collecting cases).

### IV. PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION AND/OR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

**A. Plaintiff's Remaining Claims are Time-Barred.**

Plaintiff appears to bring his remaining federal claims under Title VI, Title IX and 42 U.S.C. § 1983. Compl. at 11. The statute of limitations for bringing claims under each of these statutes is three years. *See Jersey Heights Neighborhood Ass'n v. Glendenning*, 174 F.3d 180, 187 (4th Cir. 1999) (three-year statute of limitations applies to Title VI and § 1983 claims in Maryland); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 663 (D. Md. 2012) (statute of limitations for Title IX claims follows the applicable state injury statute of limitations, which in Maryland is three years).

Here, Plaintiff's claims are based primarily on events that occurred between 2010 and 2014.[7] In particular, Plaintiff challenges the University's alleged decisions to expel Plaintiff in 2013, to ban him from its campus and place a hold on his records in February 2014, to deny him access to the campus in March 2014, and to remove him from the campus in August 2014.

---

[7] The latest date on which Plaintiff references any conduct by Defendants in his complaint appears to be July 22, 2016, when Defendant Terry-Veal allegedly "wrote to confirm permanently [*sic*] 'hold' without transcripts and graduation and barred from Morgan State[.]" Compl. at ¶ 60." However, according to Plaintiff, the University's decisions to place a hold on Plaintiff's academic records and deny Plaintiff access to the University occurred on February 26, 2014 and March 25, 2014, respectively. Compl. at ¶¶ 36, 47(a). Thus, the statute of limitations began to run in 2014, when Plaintiff knew or should have known of the University's decisions to place a hold on his academic record and deny him access to campus. *See Jersey Heights Neighborhood Ass'n*, 174 F.3d at 187 ("Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."). In any event, even if the limitations period did not start running until July 22, 2016, Plaintiff's claims are still time barred because he did not commence this suit until over three years later.

Compl. at ¶¶ 30, 34, 36, 45-47.  Plaintiff filed the instant complaint on November 19, 2019, more than five years after these alleged occurrences in 2014.  As a result, Plaintiff's Title VI, Title IX and § 1983 claims are plainly time-barred and should be dismissed.

Plaintiff also appears to assert breach of contract and defamation claims under Maryland law.  Compl. at ¶¶ 30(c), 74(b).[8]  These claims, too, are time-barred.  Plaintiff's defamation claims are based on alleged defamatory statements made by Defendant Garrison in or around Fall 2013.  Compl. at ¶ 30(c).  Plaintiff's breach of contract claims are based on unidentified "fiduciary contracts."  Compl. at ¶ 74(a)-(b).  Plaintiff does not identify the dates on which Defendants allegedly breached such unidentified contracts; however, the alleged events that form the basis of the complaint appear to have largely taken place in 2013-14.  In Maryland, the statute of limitations for filing a defamation claim is one year.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-105 (one-year limitations period for defamation claims).  A tort claim against a state agency, such as Morgan State University, must be filed within three years under the Maryland Tort Claims Act.  *See* Md. Code Ann., State Gov't § 12-106.   Likewise, a breach of contract claim against the State or one its units must be filed within one year of the date on which the claim arose or the completion of the contract that gives rise to the claim).  *See* State Gov't § 12-202.  Consequently, Plaintiff's common law claims are time-barred and should be dismissed.[9]

---

[8] The complaint has two paragraphs numbered 74.  Accordingly, Defendants will refer to the first paragraph 74 as paragraph 74(a) and the second as paragraph 74(b).

[9] Plaintiff entitles Count IX of his complaint "Abuse of Process."  Compl. at 12.  However, to the extent that Plaintiff is alleging an abuse of process claim, such a claim is inapplicable in this case.  As the U.S. District Court for the District of Columbia explained in *Mwabira-Simera v. Howard Univ.*, a common law claim for abuse of process "arises when one party has misused or perverted the court system against another." 692 F. Supp. 2d at 70.  Here, Plaintiff does not appear to allege that Defendants invoked the court system at all in their dealings with Plaintiff, such that any abuse of process claims against Defendants should be dismissed.

9

**B. Plaintiff's § 1983 Claims Against the University and the Individual Defendants in Their Official Capacities for Retrospective and Monetary Relief Are Barred by Eleventh Amendment Immunity.**

Even if Plaintiff's § 1983 claims against the University and the Individual Defendants in their official capacities for retrospective and monetary relief were not time-barred, they are not viable for the additional reason that they are barred by Eleventh Amendment immunity. "Unless a State has consented to the waiver of its immunity under the Eleventh Amendment, or unless its Eleventh Amendment immunity has been abrogated by permissible congressional act to enforce the Fourteenth Amendment, the State may not be sued in federal court by private parties." *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018) (citation omitted). "This same proscription applies to suits against state agencies and state officials when the latter are acting in their official capacities." *Id.* (citation omitted).

"Morgan State is undeniably an arm of the State of Maryland, and, hence entitled to claim the State's Eleventh Amendment immunity." *Id.* at 865-66 (citing Md. Code Ann., Educ. § 14-101(a)(1)). Congress has not abrogated states' Eleventh Amendment immunity in connection with 42 U.S.C. § 1983. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."). Additionally, the University has not waived its Eleventh Amendment sovereign immunity. *See* Md. Code Ann., Educ. § 14-104(q)(5) ("This subsection may not be construed to waive or abrogate the immunity of the University under the Eleventh Amendment to the United States Constitution."); *Hyde v. Md. State Bd. of Dental Examiners*, No. 1:16-CV-02489-ELH, 2017 WL 2908998, at *7 (D. Md. July 7, 2017) ("Maryland has not waived its Eleventh Amendment immunity to a [§ 1983] suit . . . in federal court.").

Plaintiff's § 1983 claims against the Individual Defendants in their official capacities for retrospective and monetary relief are also barred by the Eleventh Amendment. *See Middlebrooks v. Univ. of Md. at Coll. Park*, 980 F.Supp. 824, 828 (D. Md. 1997) (claims "seeking monetary or retrospective damages are barred by the Eleventh Amendment."); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted).

As a result, the Court lacks subject matter jurisdiction over any § 1983 claims against the University or the Individual Defendants in their official capacities for monetary or retroactive relief, and such claims should be dismissed.

### C. Plaintiff's § 1983 Claims Against the Individual Defendants in Their Official Capacities for Prospective Relief Fail to State a Claim Upon Which Relief can Be Granted.

Even if Plaintiff's § 1983 claims were not time-barred, his claims against the Individual Defendants in their official capacities for prospective relief based on alleged constitutional violations should be dismissed because they fail to state a claim upon which relief can be granted.

As an initial matter, Plaintiff's complaint is largely devoid of allegations demonstrating which Defendants had what specific involvement, if any, in any purported constitutional violations. *See Uzoechi v. Wilson*, No. CV JKB-16-3975, 2018 WL 2416113, at *7 (D. Md. May 29, 2018) ("a plaintiff bringing a claim grounded in an alleged violation of the Constitution by a State official must a) bring the claim under Section 1983, b) identify the specific constitutional right allegedly infringed, and c) specifically identify *which* State official(s) violated that right."), *aff'd*, 735 F. App'x 65 (4th Cir. 2018).

11

In those rare instances where Plaintiff indicates which Defendant(s) were involved in specific conduct that violated a particular constitutional right, Plaintiff's complaint fails to state a claim under § 1983. Plaintiff asserts, for example, that between 2010 and 2013, Defendants Garrison and Robinson "continued secretly digging dirt [*sic*]" about Plaintiff in violation of Plaintiff's Fourth Amendment rights. Compl. at ¶ 27. Plaintiff's complaint contains no factual allegations, however, explaining what information Defendants Garrison and Robinson were acquiring about Plaintiff, or how their alleged actions constituted a violation of Plaintiff's Fourth Amendment rights.

Similarly, Plaintiff asserts that on August 15, 2014, he was placed under "false arrest" by Defendant Byrd. Compl. at ¶ 42. Plaintiff also alleges that on August 26, 2014, he came onto the University's campus (in violation of the advisement of the Denial of Access notice provided to him on August 14, 2014), where he was again placed under "false arrest" and escorted to a public bus stop by Defendants Byrd and Evans, at the direction of Defendant Wiggins. Compl. at ¶ 46. However, beyond his conclusory assertions that he was subjected to "false arrests," Plaintiff provides no factual allegations whatsoever which would support a constitutional claim against Defendants Byrd, Evans or Wiggins.

Plaintiff also appears to claim that in around October 2013, Defendant Garrison violated his substantive due process rights by expelling Plaintiff because of Plaintiff's submission of fraudulent documents to WES, an academic credentialing organization. Compl. at ¶¶ 4, 30. In order for Plaintiff to establish a substantive Due Process violation based on his expulsion from the University, he must demonstrate that Defendant Garrison's actions in expelling Plaintiff were "so arbitrary and egregious as to 'shock the conscience.'" *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 519 (4th Cir. 2005) (quoting *Sacramento v. Lewis*, 523 U.S.

833, 846-47 (1998)). Plaintiff, however, alleges no factual allegations which would demonstrate that Defendant Garrison's decision to expel Plaintiff for submitting fraudulent academic documents to WES was arbitrary or egregious.

For these reasons, Plaintiff has failed to state a claim under § 1983 against the Individual Defendants, such that his claims for prospective relief should be dismissed.

### D. Plaintiff's § 1983 Claims Against the Individual Defendants in Their Individual Capacities Are Barred by Qualified Immunity.

Even if Plaintiff's § 1983 claims were not time-barred, his claims against the Individual Defendants in their individual capacities should be dismissed because they are barred by qualified immunity. The "doctrine of qualified immunity is designed to ensure that the government officials performing discretionary functions can exercise their duties 'free from the specter of endless and debilitating lawsuits.'" *Jackson v. Hogan*, Civ. A. No. PX 16-744, 2016 WL 6680209, at *4 (D. Md. Nov. 14, 2016) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991)). "The Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage of litigation.'" *Moxley v. Town of Walkersville*, 601 F. Supp. 2d 648, 664 (D. Md. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

> To decide qualified immunity, the Court conducts a two-pronged inquiry:
>
> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

*Cloaniger ex. rel. Estate of Cloaniger v. McDevitt*, 555 F.3d 324, 330-31 (4th Cir. 2009) (citation omitted).

Here, the Individual Defendants are entitled to qualified immunity because, for the reasons stated above, Plaintiff has failed to allege facts sufficient to state constitutional violations, and he

13

has failed to allege facts showing that the Individual Defendants violated any clearly established rights in connection with the University's decisions to expel Plaintiff, place a hold on his accounts and deny him access to the campus.

### E. Plaintiff's Common Law Claims Are Barred by Eleventh Amendment Immunity.

Even if Plaintiff's state-law claims were not time-barred, they should be dismissed because they are barred by Eleventh Amendment immunity. Although the State of Maryland has enacted a limited waiver of sovereign immunity for certain types of tort actions through the Maryland Tort Claims Act, it has only done so for actions brought in Maryland *state* courts. *See* Md. Code Ann., State Gov't § 12-104(a)(1) ("[T]he immunity of the State and of its units is waived as to a tort action, in a court of the State."). Thus, as this Court has repeatedly found and the Fourth Circuit has affirmed, Maryland's "waiver of sovereign immunity in the Maryland Tort Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts." *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990) (citing *Smith v. Bernier*, 701 F.Supp. 1171 (D. Md. 1988)); *Davenport v. Maryland*, 38 F. Supp. 3d 679, 691 (D. Md. 2014) ("[W]hile Maryland has . . . waived its sovereign immunity in state court for certain tortious actions of state personnel, it has not consented to tort suits in federal court.") (citations omitted).

Thus, Defendants have not consented to federal court jurisdiction for tort claims filed in federal court. Accordingly, the court should dismiss Plaintiff's common law tort claims against Defendants for lack of jurisdiction.

### F. Plaintiff's Title VI and Title IX Claims Should Be Dismissed.

#### 1. Plaintiff Cannot Assert Title VI and Title IX Claims Against the Individual Defendants.

Even if they were not time-barred, Plaintiff's claims of discrimination against the Individual Defendants under Title VI and Title IX should be dismissed for because neither statute authorizes suits against individual defendants. "The text of Title VI . . . precludes liability against . . . individuals." *Howard Univ.*, 692 F. Supp. 2d at 70 (quoting *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169-70 (11th Cir. 2003)) (textual alterations omitted); *see also Pearson v. Bd. of Educ. of Anne Arundel Cnty.*, Civ. A. No. CCB-17-2358, 2018 WL 1378825, at *2 (D. Md. Mar. 19, 2018) (finding that individuals cannot be liable under Title VI). Likewise, "individual defendants are not proper defendants under Title IX." *Howard Univ.*, 692 F. Supp. 2d at 70 (quoting *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007) (textual alterations omitted)); *see also Steverson v. Dantone*, No. RWT-13-3392, 2014 WL 2616989, at *2 (D. Md. June 11, 2014) (plaintiff had no right to relief based on personal liability under Title IX).

#### 2. Plaintiff Has Failed to State a Claim Against the University Under Title VI and Title IX.

Even if Plaintiff's Title VI and Title IX claims were not time-barred, they should be dismissed because Plaintiff has failed to state a claim under either statute. In order to state a *prima facie case* for discrimination in the educational context under Title VI or Title IX, Plaintiff must demonstrate that he (1) is a member of a protected class, (2) was qualified to continue in his educational program, and (3) nonetheless suffered an adverse consequence. *McCrea v. Johns Hopkins Univs.*, Civ. No. JKB-15-0579, 2016 WL 6166999, at *7 (D. Md. Oct. 24, 2016) (citing *Middlebrooks v. Univ. of Md.*, 166 F.3d 1209 (4th Cir. 1999) (unpublished)).

Here, Plaintiff has alleged no factual allegations which would support that he was qualified to continue in his educational program at the University. On the contrary, Plaintiff alleges that he was expelled from the University because he submitted fraudulent academic documents to an academic credentialing service. Compl. at ¶ 30. Moreover, Plaintiff has offered nothing more than conclusory allegations that he was discriminated on the basis of his race, national origin and sex. *See, e.g.*, Compl. at ¶ 60 ("Defendant filed false charges against plaintiff and failed Plaintiff on the basis of his [filthy jungle/forest] African national origin."); Compl. at ¶ 80 ("Defendant has discriminated on the basis of sex against applicants with respect to credit transactions"). Such vague and conclusory assertions are insufficient to sustain his discrimination claims under Title VI and Title IX. *See Middlebrooks*, 166 F.3d 1209 (affirming summary judgment against plaintiff's discrimination claims which were based on conclusory statements and unsupported allegations of discrimination). Accordingly, the Court should dismiss Plaintiff's Title VI and Title IX claims.

## V. PLAINTIFF'S ATTEMPTED SERVICE OF THE SUMMONS AND COMPLAINT IS INSUFFICIENT TO EFFECT SERVICE.

Under Fed. R. Civ. P. 12(b)(5), Defendants may move to dismiss for insufficient service of process. "If service is contested, the 'plaintiff bears the burden of establishing its validity pursuant to Rule 4.'" *Miller v. Balt. City Bd. of Sch. Commr's*, 833 F. Supp. 2d 513, 516 (D. Md. 2011) (quoting *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)).

Plaintiff has attempted to serve his complaint and summons in this matter upon the University and the Individual Defendants via certified mail. *See* ECF Nos. 7-9, 11, 14-17. More specifically, Plaintiff attempted to serve each of the Defendants, except for Defendant Byrd,[10] via

---

[10] There is no record of attempted service upon Defendant Byrd.

16

certified mail addressed to Morgan State University, 1700 East Cold Spring Lane, Baltimore, Maryland 21251. *Id.*[11]

With respect to Plaintiff's official capacity claims, such claims "are no different from a suit against the State itself." *Will*, 491 U.S. at 71.  Plaintiff's attempted service via certified mail of his complaint and summons is insufficient to effect service upon the State of Maryland or Morgan State University (including the Individual Defendants in their official capacities).  *See* Fed. R. Civ. P. 4(j)(2) ("State or Local Government.  A state, municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:  (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such defendant."); Md. Rule 2-124(k) ("Service is made on an officer or agency of the State of Maryland by serving (1) the resident agent designated by the officer or agency, or (2) the Attorney General or an individual designated by the Attorney General in a writing filed with the Clerk of the Court of Appeals.").

Plaintiff's attempts to serve individual capacity claims upon the Individual Defendants (except for Defendant Benn) are also insufficient.  Initially, there is no evidence that Defendants Garrison, Williams, Jones, Robinson, Jackson, Wiggins, Cooper, Shepperson, Barber, Vollmer, Veal or Mitchell were ever served with a copy of the summons and complaint.  *See* ECF Nos. 9,

---

[11]Counsel for the University and Defendants Banks, Barber, Farrar, Garrison, Jackson, Robinson, Shepperson, Turner, Vollmer and Wilson contacted Plaintiff by electronic mail dated February 26, 2020, and advised him that his attempt to serve the University and the Individual Defendants was ineffective, and further directed Plaintiff as to the appropriate methods by which he could serve the University and the Individual Defendants. **Ex. 1**.  To date, Plaintiff has not responded.

14, 15-17.  With respect to Defendants Janak, Farrar, Banks, Turner and Wilson,[12] there is no record evidence that any of the Individual Defendants personally signed for the certified mail or that they authorized anyone to accept service via certified mail on their behalf.  *See* Md. Rule 2-124(b); *see also Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 656 (D. Md. 1986) (plaintiff's burden to show that recipient of service was "authorized by law or appointment to accept service of process on behalf of any of the individual defendants."); *Abu-Shawish v. U.S.*, No. 10-C-0473, 2012 WL 639921, at *2 (E.D. Wis. Feb. 27, 2012) ("The fact that someone signed for a piece of mail on behalf of another says nothing about whether that person was authorized to accept service of proves on the other person's behalf."), *aff'd*, 546 F. App'x 576 (7th Cir. 2013).

---

[12] Defendant Benn is the only Individual Defendant who personally signed a certified mail receipt for a copy of the summons and complaint.  As discussed in *supra* Sections IV.A and IV.D, Plaintiff's claims against Defendant Benn in her individual capacity are time-barred and barred by qualified immunity.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's complaint with prejudice.

Respectfully submitted,

Dated:  April 8, 2020
       Baltimore, MD

BRIAN E. FROSH
Attorney General of Maryland

/s/ *Lillian L. Reynolds*
Christopher B. Lord (Bar No. 26177)
Lillian L. Reynolds (Bar No. 30225)
Assistant Attorney General
Office of the Attorney General
Educational Affairs Division
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202-2021
Phone: (410) 576-6481
Facsimile: (410) 576-6437
Email: lreynolds@oag.state.md.us

*Attorneys for Defendants*
Morgan State University, Kevin Banks, Tanyka Barber, Linda Farrar, Mark Garrison, Keith Jackson, Marcia Shepperson, Kara Miles Turner, Raymond Vollmer and David Wilson